IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Gary Lee Smith                              :
                                            :
                                            :
       v.                                   :    Civil No. CCB-14-3487
                                            :
                                            :
Officer J. Aita, *et al*.                   :
                                            :

## MEMORANDUM

Plaintiff Gary Lee Smith sues Officers Justin Aita, Jason Sander, Joseph Burt, John Dimare, and the City of Salisbury ("Salisbury") for excessive force and false arrest. Now pending is his amended complaint, treated as a motion for leave to amend pursuant to this court's order issued March 24, 2016, and the defendants' motion to strike the amended complaint, or in the alternative, opposition to leave to amend. The court finds oral argument unnecessary to resolve the issues. *See* Local R. 105.6 (D. Md. 2016). For the reasons stated below, the plaintiff's motion for leave to amend will be granted, and the defendants' motion, construed as a motion to dismiss, will be granted in part and denied in part.

## BACKGROUND

This action arises from an altercation between Smith and Salisbury police officers on the morning of April 28, 2014. (Am. Compl. ¶ 15, ECF No. 27.) Smith claims that he was sleeping in a car at an apartment complex in Salisbury when he awoke to Officers Aita, Dimare, Sander, and Burt surrounding the car. (*Id*.) Aita, Dimare, and Sander had their guns drawn and pointed at him. (*Id*.) The officers forced open the car, pulled Smith out of it, and pushed Smith against the side of the car. (*Id*.) When the officers told the plaintiff they were going to search him, Smith

attempted to run away. (*Id.*) Dimare grabbed Smith by the shoulder and pushed him to the ground. (*Id.* at ¶ 16.) The defendants then beat Smith "viciously and savagely." (*Id.*) After Smith "curled up in a defenseless, 'ball-like' position," the officers pepper-sprayed him and continued to punch and kick him. (*Id.*) Aita only stopped beating Smith when Sander told him that people were starting to watch. (*Id.* at ¶ 17.) Smith claims he was "beaten for no reasonable purpose for approximately 1-2 minutes, and long after any alleged, or actual, resisting arrest." (*Id.*) The beating caused Smith head injuries, scarring, pain, lacerations, bruising, emotional anguish, loss of reputation, and loss of income. (*Id.* at ¶ 18.) Smith was convicted in state court on charges related to these events, including two counts of second-degree assault, failure to obey a reasonable and lawful order made to prevent a disturbance to the public peace, and resisting arrest, and the convictions were affirmed on appeal. (Docket, Mot. Strike Ex. C, ECF No. 28-4, Court of Special Appeals Opinion 2-3, Mot Strike Ex. D, ECF No. 28-5.) He was found not guilty of attempting to disarm a law enforcement officer. (*Id.*)

The plaintiff claims that "the City of Salisbury has been on notice that Officer Aita demonstrated violent, erratic, and often racially-motivated behavior" yet continued to employ him until his resignation in May 2015. (Am. Compl. ¶¶ 14 -15.) Smith cites to seven incidents that Salisbury has been informed of in which Aita used excessive force, made racial slurs, engaged in racial targeting, altered police reports, and stalked people; two excessive force incidents occurred prior to Smith's arrest. (*Id.* ¶ 14.) He claims that the defendants have "consistently demonstrated a pattern of wrongfully targeting and arresting citizens for trivial or minor offenses, or offenses that did not happen at all, and then claiming to be the victim." (*Id.* ¶ 27.) He says the defendant officers arrest and point guns at people for no lawful reason, and they

have "demonstrated a pattern of using excessive force against citizens . . . when no such force was reasonably necessary." (*Id*.)

Smith brings claims against the officers and Salisbury under 42 U.S.C. § 1983, and he seeks actual damages, punitive damages, costs, and attorney's fees. His excessive force claim alleges violations of the Fourth Amendment, and his false arrest claim alleges violations of the Fourth and Fourteenth Amendments.

## ANALYSIS

Under Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P. 15(a)(1). "In all other cases," as here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "[L]eave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). Amendment would be futile when "the proposed amended complaint fails to satisfy the requirements of the federal rules," such as the requirements of Rule 12(b)(6). *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citations and internal quotation marks omitted).

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion, the court does not always have to limit its review to the pleadings. It can also take judicial notice of public records, including statutes, and can "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

I.   Leave to Amend

The defendants argue that the court should not grant leave to amend the complaint because the amendment is prejudicial and would be futile. Granting leave to amend would not be unduly prejudicial to the defendants at this early stage of the proceedings. Because the court finds that Smith's excessive force claim survives a Rule 12(b)(6) motion to dismiss, as discussed more fully below, amending the complaint would not be futile. As the plaintiff's proposed amended complaint is not prejudicial to the defendants, is not alleged to have been made in bad faith, and is not futile, the court will grant the plaintiff's motion for leave to amend. The court will construe the defendants' motion as a motion to dismiss the amended complaint in light of their request that the court convert the motion if the plaintiff's leave to amend were granted.

II.   Official Capacity Claims

To the extent that the defendants bring claims against the officers in their official capacities, those claims will be dismissed. Although the officers may be held liable under § 1983 in their individual capacities, *see Hafer v. Melo,* 502 U.S. 21, 31 (1991), state officials "acting in their official capacities" are not subject to liability under § 1983, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

III.   False Arrest

Smith alleges the officers unlawfully arrested him. To demonstrate false arrest, a plaintiff must show that he was arrested without probable cause. *See Brown v. Gilmore*, 278 F.3d 362, 367-68 (4th Cir. 2002). The defendants argue that Smith cannot pursue a false arrest claim because a judgment in his favor on this count would call into question the validity of his state court convictions. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court

must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The *Heck* court explained that a civil suit for an unreasonable seizure predicated on a false arrest would be barred so long as the conviction for resisting arrest had not been invalidated because in order to prevail in the § 1983 action, the prisoner "would have to negate an element of the offense of which he has been convicted." *Heck*, 512 U.S. at 486 n.6. *Heck* therefore bars recovery for Smith's false arrest claim because the lawfulness of the arrest is a necessary element of the criminal offense of resisting arrest, and to prevail in a § 1983 action for false arrest, Smith would have to negate the lawfulness element of the resisting arrest offense.[1] The defendants' motion to dismiss the false arrest claim will be granted.

    IV.    Excessive Force

Smith claims the officers used excessive force after he had stopped resisting arrest. The defendants argue that Smith's excessive force claim, like his false arrest claim, is barred by *Heck*. If the alleged excessive force occurred "after his resistance had clearly ceased, then a successful § 1983 suit for excessive force would not imply invalidity of the conviction." *Riddick v. Lott*, 202 F. App'x 615, 616 (4th Cir. 2006) (holding that *Heck* did not prevent the plaintiff from bringing a § 1983 action against the arresting officer for use of excessive force despite the fact that the plaintiff pled guilty to assaulting a police officer while resisting arrest)[2]; *see also Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc) (If the officers' "alleged acts

---

[1] Because the court finds that Smith's false arrest claim is barred by *Heck*, the court need not address the defendants' argument that the plaintiff fails to state a Fourteenth Amendment false arrest claim.
[2] Unpublished cases are cited not as precedent but for the relevance and persuasiveness of their reasoning.

of excessive force . . . occurred *before* or *after* [the plaintiff] committed the acts to which he pled, [they] would not invalidate his conviction."). Force can be excessive even if an earlier use of force was reasonable. *Brockington v. Boykins*, 637 F.3d 503, 507 (4th Cir. 2011) (upholding district court's denial of the officer's motion to dismiss the excessive force claim where the officer continued to shoot the plaintiff multiple times after the plaintiff was immobilized from being shot, thrown to the ground, and wounded). Because Smith maintains that the officers punched, kicked, and pepper-sprayed him after he had stopped resisting arrest, Smith's excessive force claim is not barred by *Heck*. The defendants' motion to dismiss the excessive force claim will be denied.

     V.     Bystander Liability

The defendants argue in their reply that Smith's amended complaint does not contain a claim for bystander liability. "To succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer '(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act.'" *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 417 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002)). By alleging that the other defendant police officers were present when Aita "viciously beat Mr. Smith for another 10-20 seconds" after Smith had "curled up in a defenseless, 'ball-like' position" and was pepper-sprayed, and that Aita only stopped beating Smith when Sander told him people were watching, Smith has pled factual content that allows the court to draw the reasonable inference that Dimare, Burt, and Sander knew that Aita was subjecting Smith to excessive force, had an opportunity to stop him, and chose not to intervene until they became concerned that people were watching. *See*

*Stevenson*, 743 F.3d at 419 (holding that the plaintiffs pled a § 1983 bystander liability claim against police officers, even though their complaint did not expressly recite the elements of bystander liability or assert bystander liability as a cause of action, where the plaintiffs alleged that they were subjected to unreasonable seizure, the police officers were present at the scene, and the officers allowed the unreasonable seizure to be committed). Smith has sufficiently pled a § 1983 bystander liability claim against Dimare, Burt, and Sander.

    VI.    *Monell* Claim

The defendants contend that Smith fails to state a claim for relief against Salisbury. Under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978), a municipality can be held liable under § 1983 "if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Monell*, 436 U.S. at 694). A municipality may be liable if its "police force develops an unconstitutional custom or usage, i.e., a widespread practice of a particular unconstitutional method, . . . but only if [the practice's] continued existence can be laid to the fault of municipal policy-makers, and a sufficient causal connection between the municipal custom and usage and the specific violation can then be established." *Randall*, 302 F.3d at 210 (citations and internal quotation marks omitted). In order for liability to attach in these circumstances, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Id.*

In this case, Smith alleges illegal patterns and practices of the Salisbury Police Department regarding the use of excessive force, baseless arrests, racial targeting, and falsified police reports. Because only Smith's excessive force claim remains, his *Monell* claim is limited to his allegation that Salisbury is liable for maintaining a custom of subjecting citizens to excessive force. Specifically, Smith claims that the excessive force Aita used against him was endemic among the officers of the Salisbury Police Department. He asserts that Salisbury knew that its police officers, particularly Aita, had a pattern of using excessive force, and the city did nothing to stop the unconstitutional conduct. Although the amended complaint contains greater specificity with respect to the claims regarding Aita's actions, the more general allegations with respect to all defendant Salisbury police officers are adequate to survive the defendants' motion to dismiss. At this stage, it is enough that Smith has alleged that Salisbury was aware of ongoing constitutional violations by Salisbury police officers and did nothing to stop or correct those actions, thereby allowing an unconstitutional pattern to develop. *See Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (stating that although "[t]he substantive requirements for proof of municipal liability are stringent . . . section 1983 claims are not subject to a 'heightened pleading standard' paralleling the rigors of proof demanded on the merits.").

While the *Monell* claim survives, because its viability depends on whether at least one of the defendant officers violated Smith's constitutional rights, the defendants' unopposed request to bifurcate will be granted.

## CONCLUSION

For the reasons stated above, the plaintiff's motion for leave to amend will be granted, and the defendants' motion to dismiss will be granted in part and denied in part.

A separate order follows.

July 2, 2016 /S/
Date Catherine C. Blake
United States District Judge